**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JENNIFER B. CAMPBELL, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 12-1769 (RC) |
| v. : | |
| : | Re Document No.: 83 |
| DISTRICT OF COLUMBIA, : | |
| : | |
| Defendant. : | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

**I. INTRODUCTION**

After a five-day trial, a jury found that, in the process of terminating Plaintiff Dr. Jennifer Campbell's employment, Defendant District of Columbia denied her the procedural due process that it owed her under the Fifth Amendment of the Constitution. The Court entered judgment against the District in the amount of $554,823, which reflected (1) the jury's award of compensatory damages for Dr. Campbell's physical pain, emotional distress, humiliation, embarrassment, inconvenience, and medical expenses ($250,000); and (2) Dr. Campbell's financial damages in the amount to which the parties stipulated before trial ($304,823).

The District now moves to set aside the jury's verdict, or, alternatively, to reduce the judgment to just $250,000, the jury's compensatory damages award. Because the District has shown neither that no reasonable jury could have reached a verdict in Dr. Campbell's favor, nor that the Court must set aside the parties' stipulation of financial damages to prevent manifest injustice, the Court will deny the District's motion.

## II. BACKGROUND

Dr. Campbell brought suit against her former employer, the District of Columbia, in 2012. *See* Compl., ECF No. 1. Dr. Campbell alleged that the District acted unlawfully when, amidst allegations that Dr. Campbell had steered contracts, and in the wake of media articles publicizing those allegations, the District terminated her employment as Chief Operating Officer of the District's Department of Health Care Finance. *See id.* ¶¶ 6–99.

After the Court resolved the District's dispositive motions, the parties prepared for trial on Dr. Campbell's constitutional claims brought under 42 U.S.C. § 1983 and on her claims under the District of Columbia's Whistleblower Protection Act (WPA), D.C. Code §§ 1-615.51 to -615.59. *See* Joint Pretrial Statement 1, ¶ II, ECF No. 41 (stating Dr. Campbell's claims for trial). Before trial, the parties stipulated that "[t]he amount of [Dr. Campbell's] lost wages relating to her claims is $304,823." *Id.* at 2, ¶ III.2. In light of that stipulation, Dr. Campbell agreed not to call expert witnesses to testify at trial about her damages. Nov. 30, 2015 Order 2, ¶ I.4, ECF No. 48.

The parties tried Dr. Campbell's case before a jury for five days in December 2015. After Dr. Campbell presented her case-in-chief, the Court granted the District's motion for judgment as a matter of law on Dr. Campbell's WPA claim. *See* Dec. 9, 2015 Trial Tr. 9:18–11:21, ECF No. 81. But Dr. Campbell's constitutional claims were submitted to the jury for consideration, and the jury found for Dr. Campbell on one of those claims. *See* Verdict Form 2, ECF No. 65. The jury found that, by terminating Dr. Campbell's employment without due process and in a manner that "left a stigma on her by having the broad effect of largely precluding her from pursuing her chosen career," the District denied Dr. Campbell procedural due process and deprived her of her constitutionally protected right to pursue her chosen field of employment.

*See id.*; *see also* Jury Instructions 28–38, ECF No. 66. The jury awarded Dr. Campbell $250,000 in compensatory damages for her physical pain, emotional distress, humiliation, embarrassment, inconvenience, and medical expenses. *See* Verdict Form 3; *see also* Jury Instructions 39–40 (instructing the jury to award monetary damages for physical pain, emotional distress, humiliation, embarrassment, inconvenience, and medical expenses, but not for lost wages or other benefits).

The Court entered judgment against the District in the amount of $554,823. *See* Final J., ECF No. 75. The final judgment reflected (1) the jury's compensatory damages award ($250,000) and (2) Dr. Campbell's financial damages in the amount to which the parties stipulated before trial ($304,823). *See Campbell v. District of Columbia*, No. 12-1769, 2016 WL 247560, at *2 (D.D.C. Jan. 20, 2016) (explaining the components of Dr. Campbell's damages award).

The District now argues, as it did at trial, that "no reasonable juror could find that [Dr. Campbell] could have suffered the broad stigma necessary to sustain" the constitutional claim on which she received a favorable jury verdict. Def.'s Mot. J. Matter of Law 1, ECF No. 83 [hereinafter Def.'s Mot]; *see* Dec. 10, 2015 Trial Tr. 137:8–139:19, ECF No. 82 (making the argument at trial). Moving under Federal Rule of Civil Procedure 50, the District asks the Court to set aside the jury's verdict and enter judgment as a matter of law in favor of the District. *See* Def.'s Mot. 1.

The District also asserts that Dr. Campbell should not receive a financial damages award of $304,823. *See* Mem. P. & A. Supp. Def.'s Mot. J. Matter of Law 8–9, ECF No. 83-1 [hereinafter Def.'s Mem.]. In support, the District (1) notes that the parties stipulated to Dr. Campbell's lost wages when her WPA claim was still part of the case, (2) asserts that

3

Dr. Campbell did not present evidence at trial showing that "her lost wages were a result of the lack of due process in connection with her termination," and (3) argues that any additional remedy for Dr. Campbell's procedural due process claim should be a "name clearing hearing." *See id.* The District contends that, if the Court refuses to set aside the jury's verdict, the Court should "reduce the judgment to the $250,000 awarded by the jury." *See id.* at 9.

The Court addresses both of the District's requests in turn.

### III.  REQUEST TO SET ASIDE THE JURY VERDICT

#### A.  Legal Standard

Federal Rule of Civil Procedure 50(a) allows a party in a jury trial to make a motion for judgment as a matter of law after "a party has been fully heard on an issue" and "before the case is submitted to the jury." Fed. R. Civ. P. 50(a). If the Court finds that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party on that issue, then the Court may grant the motion for judgment as a matter of law on any "claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." *Id.* If the Court does not grant the motion, however, the Court "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).

After the jury renders its verdict, Federal Rule of Civil Procedure 50(b) allows the moving party, "[n]o later than 28 days after the entry of judgment," to renew the motion for judgment as a matter of law that it made before. *Id.* "Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." Fed. R. Civ. P. 50 advisory committee's note to 2006 amendment; *accord Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed

unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

In ruling on a Rule 50(b) motion, however, the Court "do[es] not . . . lightly disturb a jury verdict." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015) (ellipsis in original) (quoting *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007)). If the Rule 50(b) motion attacks a plaintiff's jury verdict, the Court must resolve all reasonable inferences in the plaintiff's favor. *Id.* The Court cannot substitute its view for the jury's, assess witnesses' credibility, or weigh the evidence. *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996). The jury's verdict will stand if the evidence in its support is "'significantly probative' and 'more than merely colorable.'" *Id.* (quoting *Ferguson v. F.R. Winkler GMBH & Co. KG*, 79 F.3d 1221, 1224 (D.C. Cir. 1996)). "Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Muldrow*, 493 F.3d at 165 (internal quotation mark omitted) (quoting *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000)).[1]

### B. Analysis

The District makes two arguments for setting aside Dr. Campbell's favorable jury verdict: one alleges that Dr. Campbell presented insufficient evidence, and the other argues that

---

[1] Rule 50(b) also allows a party to include "an alternative or joint request for a new trial" with its motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). If a party does so, Rule 50(b)(2) allows the Court to order a new trial. *See* Fed. R. Civ. P. 50(b)(2).

Here, however, the District has not requested a new trial. *See* Def.'s Mot. 1–2; Def.'s Mem. 1–9. The Court therefore presumes that the District inadvertently wrote that it seeks judgment as a matter of law "pursuant to Fed. R. Civ. P[.] 50(b)(*2*)." Def.'s Mot. 1 (emphasis added). The Court assumes that the District instead seeks "entry of judgment as a matter of law" in its favor under Federal Rule of Civil Procedure 50(b)(*3*). *See* Fed. R. Civ. P. 50(b)(3).

no reasonable jury could find for Dr. Campbell on the facts presented. *See* Def.'s Mem. 5–8. The Court addresses each argument in turn.

1. Whether Evidence Presented at Trial Was Sufficient to Sustain the Verdict

The District first argues that it should receive judgment as a matter of law because, at trial, Dr. Campbell "did not present any evidence that the fact of the termination [of her employment] caused her damages." Def.'s Mem. 5. Without that evidence, the District contends that Dr. Campbell's stigma-based constitutional claim "is . . . nothing more than a reputation-plus claim in disguise." *Id.*[2] The District appears to believe that Dr. Campbell therefore could not have received a favorable verdict, given that she did not prevail at trial on her "reputation-plus" claim. *See* Def.'s Mem. 5 (arguing that the "reputation-plus claim . . . , as the jury found, is untenable"); Verdict Form 1–2 (showing that the jury found against Dr. Campbell on her reputation-plus claim).

But the District misunderstands the "stigma or disability" theory of claims alleging that a government's actions deprived an individual of her constitutionally protected liberty interest in pursuing a chosen profession. As the Court already articulated in ruling on the District's summary judgment motion, "the 'stigma or disability' theory hinges not on 'official *speech*, but on a continuing stigma or disability arising from official *action*.'" *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 153 (D.D.C. 2015) (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998)). If government action seriously affects or destroys a plaintiff's ability to

---

[2] The law contemplates two ways in which a government can deprive an individual of her liberty interest in pursuing a chosen profession. *See generally Bd. of Regents v. Roth*, 408 U.S. 564, 572–75 (1972). The first is reputation-based and arises when a government makes a charge against an individual "that might seriously damage [her] standing and associations in the community." *See id.* at 573. The second is stigma-based and arises when the government imposes on the individual "a stigma or other disability" that forecloses her "freedom to take advantage of other employment opportunities." *See id.* at 573–74.

pursue her chosen profession, or substantially reduces the value of her human capital, then that action infringes a constitutionally protected liberty interest. *See O'Donnell*, 148 F.3d at 1141. To prevail under the "stigma or disability" theory, of course, the plaintiff must also show that the harm she suffered "occurred in conjunction with, or flowed from, some tangible change in status," such as an adverse employment action. *Id.* But the plaintiff need not show that the harm flowed *solely* from that tangible change in status. *See id.*

Thus, here, the Court may not disturb Dr. Campbell's verdict if she presented evidence showing that (1) the District's actions seriously affected her ability to pursue her chosen profession or substantially reduced the value of her human capital, and (2) the consequences of the District's actions "occurred in conjunction with, or flowed from," her termination. *See O'Donnell*, 148 F.3d at 1140–41. The law did not require Dr. Campbell to present evidence that her termination, standing alone, seriously affected her ability to pursue her chosen profession or substantially reduced the value of her human capital. *Contra* Def.'s Mem. 5. By arguing that Dr. Campbell had to present such narrowly tailored evidence, the District improperly merges two independent requirements for a successful "stigma or disability" claim: (1) government actions from which the plaintiff's harm flowed, and (2) an adverse employment action that occurred in conjunction with, or created, the harm. *See O'Donnell*, 148 F.3d at 1140–41; *cf.* Def.'s Mem. 5.

Disregarding the District's inaccurate view of the law, the Court is satisfied that Dr. Campbell presented sufficient evidence on which a reasonable jury could return a verdict for Dr. Campbell on her "stigma or disability" claim. District officials stated at trial that they allowed a reporter to view internal District e-mails that discussed Dr. Campbell, the allegations made against her, and how the District anticipated terminating Dr. Campbell in response to those

allegations.[3] And Wayne Turnage, Dr. Campbell's former supervisor and the Director of the District's Department of Health Care Finance, stated that he corresponded with that reporter about e-mails concerning Dr. Campbell and the allegations made against her. *See* Dec. 9, 2015 Trial Tr. 30:1–36:9, 63:14–68:2.

Based on this trial testimony, a reasonable jury could conclude that, by sharing and discussing e-mails with a reporter, the District facilitated the publication of media articles about Dr. Campbell's termination and the allegations surrounding it. *See* Pl.'s Opp'n Def.'s Mot. J. Matter of Law Exs. 20, 21, ECF Nos. 89-20, 89-21 [hereinafter Pl.'s Opp'n Exs. 20, 21] (reproducing the *Washington City Paper*'s and *The Washington Post*'s articles about Dr. Campbell); *see also* Dec. 7, 2015 Trial Tr. 34:15–38:18, 46:24–49:24, ECF No. 79 (moving both articles into evidence at trial). And based on Dr. Campbell's testimony at trial, a reasonable jury could further conclude that those media articles seriously affected Dr. Campbell's ability to pursue her chosen profession. *See* Dec. 8, 2015 Trial Tr. 55:17–57:7, ECF No. 80 (stating that Dr. Campbell was out of work for "[t]wo years," and that, even though Dr. Campbell tried to find work as an independent consultant, "[n]o one really wanted to deal with [her] because of the newspaper article"). Dr. Campbell therefore presented sufficient evidence from which a jury could conclude that the District's actions seriously affected Dr. Campbell's constitutionally protected liberty interest in pursuing her chosen profession.

---

[3] The District's Director of Communications, Pedro Ribeiro, stated that after he received a reporter's inquiry about Dr. Campbell, he "talked to the mayor's chief of staff," obtained e-mails about Dr. Campbell, and "shared them with the reporter." Dec. 8, 2015 Trial Tr. 76:20–77:12, 78:15–91:6. And the Chief of Staff for the Mayor of the District of Columbia, Christopher Murphy, stated that he gave Mr. Ribeiro e-mails about Dr. Campbell's employment status so that Mr. Ribeiro could "shar[e] with the reporter from the City Paper what had happened, [and] what was going on." *Id.* at 114:18–115:24, 117:12–119:19.

Trial testimony also indicated that the effects of the District's actions occurred in conjunction with Dr. Campbell's termination. The District placed Dr. Campbell on administrative leave about three days before its Director of Communications spoke with a reporter about her. *Compare* Dec. 8, 2015 Trial Tr. 41:6–10 (stating that the District placed Dr. Campbell on administrative leave on June 4), *with id.* at 78:15–79:3 (stating that the Director of Communications spoke with reporter Alan Suderman around June 7). And the District terminated Dr. Campbell's employment just one day after her former supervisor corresponded with that reporter. *Compare* Dec. 8, 2015 Trial Tr. 64:21–22 (stating that the District terminated Dr. Campbell's employment on June 11, 2012), *with* Dec. 9, 2015 Trial Tr. 67:13–24 (stating that Mr. Turnage emailed Mr. Suderman on June 10). And the media articles about Dr. Campbell surfaced the day of and the day after the District terminated her employment. *See* Pl.'s Opp'n Exs. 20, 21. Evidence presented at trial was hence sufficient for a reasonable jury to find (1) government actions from which Dr. Campbell's harm flowed, and (2) an adverse employment action that occurred in conjunction with the harm. Because Dr. Campbell's evidence was thus sufficient to establish a successful "stigma or disability" claim, *see O'Donnell*, 148 F.3d at 1140–41 (discussing the requirements for "stigma or disability" claims), the Court lacks any reason to set aside the jury's verdict.

The District cites cases to support its view of the matter, *see* Def.'s Mem. 5–7, but those cases do not change the Court's conclusion. The District's cases merely indicate that a termination, standing alone or in conjunction with *unpublicized* statements about the plaintiff, cannot infringe the plaintiff's liberty interest in pursuing her chosen profession. *See Bishop v. Wood*, 426 U.S. 341, 348 (1976) (holding that the plaintiff was not deprived of any liberty interest in a case in which "there is no public disclosure of the reasons for the discharge");

*Simpkins v. Sandwich Cmty. Hosp.*, 854 F.2d 215, 217–18 (7th Cir. 1988) (same, in a case in which the plaintiff did not allege "that the defendants publicized her suspected failure to account for drugs"); *Haimowitz v. Univ. of Nev.*, 579 F.2d 526, 529 (9th Cir. 1978) (same, in a case in which the plaintiff did not allege "that the [defendant] in any way publicized false, defamatory, or stigmatizing statements about him"); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 574 & n.13 (1972) ("Mere proof . . . that [the plaintiff's] record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure opportunities amounting to a deprivation of 'liberty.'"); *Bollow v. Fed. Res. Bank of S.F.*, 650 F.2d 1093, 1101 (9th Cir. 1981) ("Unpublicized accusations do not infringe constitutional liberty interests . . . ."). Those cases do not address situations like Dr. Campbell's, in which *publicized* statements flowed from government action and affected Dr. Campbell's ability to pursue her chosen profession. Even if the District did not itself publicize the allegations surrounding Dr. Campbell's termination, it did take *actions* that led to the allegations' publication. As discussed above, based on the evidence presented at trial, a reasonable jury could conclude that those actions, in conjunction with Dr. Campbell's termination, seriously affected Dr. Campbell's constitutionally protected right to pursue her chosen profession. Because the District's cited cases rely on different underlying facts, they provide no reason to set aside Dr. Campbell's jury verdict.[4]

---

[4] The Court does not quarrel with the District's assertions that "the liberty-interest protection should not be further expanded," Def.'s Mem. 6, and that "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions," *id.* at 7 (quoting *Bishop v. Wood*, 426 U.S. 341, 359 (1976)).

The Court's conclusions here, however, rely on the pre-existing principles that "[t]he Constitution protects an individual's 'right to follow a chosen trade or profession' without governmental interference" and that "[g]overnment action that has the effect of 'seriously affecting, if not destroying' a plaintiff's ability to pursue [her] chosen profession, or

2. Whether a Reasonable Jury Could Find that the District's Actions Precluded Dr. Campbell from a Sufficiently Broad Range of Employment Opportunities

The District's alternative argument for judgment as a matter of law also lacks merit. In arguing that "[n]o reasonable jury could find that [Dr. Campbell's] termination broadly for[e]closed her ability to practice in her chosen field," Def.'s Mem. 7, the District merely restates unsuccessful arguments it made in previous motions. In making its arguments, the District appears to present two implicit challenges to the jury's verdict: (1) a two-year period of unemployment or underemployment is insufficient to establish an actionable liberty deprivation, and (2) during her two-year period of unemployment or underemployment, Dr. Campbell's temporary work as a contractor means the District did not interfere with Dr. Campbell's ability to pursue her chosen profession. *See id.* at 7–8. The Court has already rejected both these challenges, and neither persuades the Court to change course now.

To the extent that the District argues that an actionable liberty deprivation must last longer than two years, the Court rejected the argument for "a bright-line minimum duration rule" in ruling on the District's motion for summary judgment, and the Court rejected it again at trial. *See Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 154 (D.D.C. 2015); Dec. 8, 2015 Trial Tr. 182:25–186:6; Dec. 9, 2015 Trial Tr. 9:18–12:3. And, to the extent that the District argues that Dr. Campbell's temporary work during the two-year period precludes judgment in

---

'substantially reducing the value of [her] human capital,' . . . infringes a liberty interest." *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (brackets and citations omitted) (first quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995); and then quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994)). Thus, if a government employer's personnel decisions seriously affect a plaintiff's ability to pursue her chosen profession or substantially reduce the value of her human capital, *O'Donnell*, 148 F.3d at 1141, then, unless she receives constitutionally adequate procedures, the plaintiff has a viable procedural due process claim against her government employer.

her favor, the Court also rejected that argument at trial. *See* Dec. 10, 2015 Trial Tr. 137:8–140:1; Dec. 11, 2015 Trial Tr. 7:13–20, ECF No. 92.

The Court declines to reopen the law of the case as set forth in these previous rulings. *See generally Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (explaining that "[t]he law-of-the-case doctrine . . . 'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit courts' power . . .'" (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912))). The Court properly submitted to the jury the question of whether the District's actions precluded Dr. Campbell "from such a broad range of opportunities" that the District's actions interfered with her constitutionally protected right to follow a chosen trade or profession. *See Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995) (discussing the "broad range of opportunities" that, to allege a stigma-based procedural due process claim, the plaintiff must show that she lost). A reasonable jury could have found either for or against Dr. Campbell on that issue. *See generally Williams v. Johnson*, 776 F.3d 865, 869–70 (D.C. Cir. 2015) ("The jury performs its quintessential function when it decides the magnitude of a misdeed."). The Court therefore declines to enter judgment as a matter of law in the District's favor.

### IV.  REQUEST TO REDUCE THE JUDGMENT

#### A.  Legal Standard

Within its motion for judgment as a matter of law under Federal Rule of Civil Procedure Rule 50(b), the District also asks the Court to "reduce the judgment to the $250,000 awarded by the jury," Def.'s Mem. 8–9, because "the Court added $304,823 in back pay to [Dr. Campbell's] recovery despite the fact that [she] presented no evidence that the alleged stigma caused her loss of income," Def.'s Mot. J. 1. But even though the District styles its request as one under Rule 50(b), the District never made its request before the jury rendered its verdict. *See Exxon Shipping*

*Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."); *supra* Part III.A (discussing the legal standard for motions under Rule 50(b)). Accordingly, because the District's request is, in essence, a request to alter or amend a judgment under Rule 59(e), the Court analyzes it under Rule 59(e)'s legal standard. *See* Fed. R. Civ. P. 59(e) (allowing parties to file a "motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment").

Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Such motions cannot be used as "an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (placing the burden on the movant in the context of a Rule 54(b) motion for reconsideration); *see Kittner v. Gates*, 783 F. Supp. 2d 170, 172 (D.D.C. 2011) (same, for motions under Rules 59(e) and 60(b)).

### B.  Analysis

In seeking a reduction of the judgment, the District begins from an incorrect premise: that the Court's award of $304,823 in financial damages was "back-pay." *See* Def.'s Mem. 8. But, in

13

their pretrial stipulations, the parties themselves characterized the $304,823 as Dr. Campbell's "lost wages relating to her claims," Joint Pretrial Statement 2, ¶ III.2, and the Court accordingly awarded Dr. Campbell that amount in "financial damages," *see Campbell v. District of Columbia*, No. 12-1769, 2016 WL 247560, at *2 (D.D.C. Jan. 20, 2016).

In cases alleging procedural due process violations under 42 U.S.C. § 1983 and monetary harm flowing from those violations, financial damages like those awarded here may be appropriate. "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). Because § 1983 creates "a species of tort liability," damages are "ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (internal quotation marks omitted) (quoting *Carey*, 435 U.S. at 253). And because damages in tort cases seek to compensate the plaintiff for harms caused by the defendant's breach of duty, compensatory damages in § 1983 cases may include compensation for both "monetary harms" and emotional harm. *Id.* at 307. Thus, here, because Dr. Campbell prevailed on a constitutional claim under § 1983, she was entitled to an award of damages to compensate her for any monetary harms she suffered because of the District's constitutional violation.

Of course, in a typical case, a § 1983 plaintiff must still prove her damages. *See Carey*, 435 U.S. at 263–64 (holding that, for procedural due process claims brought under § 1983, the plaintiff must convince the factfinder that the plaintiff actually suffered harm "because of the denial of procedural due process itself"). But here, because the District stipulated to Dr. Campbell's lost wages, Dr. Campbell agreed not to call witnesses to corroborate her damages claims at trial. *See* Pl.'s Schedule of Witnesses 5, Joint Pretrial Statement Attach. 1, ECF

No. 41-1 ("The District agreed to the stipulations about Plaintiff's earnings . . . because of [Dr. Campbell's] representation that she would not be calling these witnesses at trial."); Nov. 30, 2015 Order 2, ¶ I.4 ("In light of the stipulation about Ms. Campbell's lost wages, . . . Ms. Campbell agreed not to call these witnesses at trial."). Because a stipulation is an express waiver "conceding for the purposes of trial the truth of some alleged fact . . . so that the one party need offer no evidence to prove it and the other is not allowed to disprove it," Dr. Campbell did not need to present evidence establishing her financial damages or evidence linking those damages to her constitutional claims. *See United States v. Harrison*, 204 F.3d 236, 240 (D.C. Cir. 2000) (internal quotation marks omitted) (quoting *Vander Linden v. Hodges*, 193 F.3d 268, 279 (4th Cir. 1999)).

The District therefore cannot argue that "[n]o evidence was presented at trial showing that [Dr. Campbell's] lost wages were a result of the lack of due process in connection with her termination." Def.'s Mem. 8. As the Court has already noted, "[t]he District's objection that a portion of [Dr. Campbell's] damages should not be attributed to the District's constitutional violation came far too late in the proceedings to disavow the prior concession upon which the trial presentation proceeded." *Campbell*, 2016 WL 247560, at *2 n.1. Unless the Court sets aside the parties' pretrial stipulation, no reason exists to reduce the judgment in accordance with the District's request.[5]

---

[5] Furthermore, though the evidence at trial did not touch on the *amount* of Dr. Campbell's financial damages, the evidence did show that her financial damages (in the form of lost wages) flowed from the District's actions. *See* Dec. 8, 2015 Trial Tr. 55:17–57:7 (describing how Dr. Campbell struggled for two years to find work "because of the newspaper article" that reported on why she was terminated); *supra* Part III.B.1 (explaining how a reasonable jury could find, based on trial testimony, that the District's actions led to the newspaper article's publication). Thus, the District is simply incorrect when it alleges that "[n]o evidence was presented at trial showing that [Dr. Campbell's] lost wages were a result of the lack of due process in connection with her termination." Def.'s Mem. 8.

A court may set aside a pretrial stipulation only "to prevent manifest injustice." *Coop. Servs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 562 F.2d 1292 (D.C. Cir. 1977) (per curiam) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 16(e))). In an attempt to meet this standard, the District mentions that it stipulated to Dr. Campbell's lost wages when Dr. Campbell's WPA claim "was still part of the case." Def.'s Mem. 8. But the District does not allege that the Court should have interpreted the stipulation as valid only for purposes of Dr. Campbell's WPA claim. *See id.* The District has therefore waived that argument. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[U]ndeveloped arguments . . . are deemed waived."). Furthermore, nothing in the preverdict record indicates that the District intended its stipulation to apply to only Dr. Campbell's WPA claim. *See* Joint Pretrial Statement 2, ¶ III.2 ("The amount of Plaintiff's lost wages relating to her *claims* is $304,823." (emphasis added)); Pl.'s Schedule of Witnesses 5 (discussing "the stipulations about [Dr. Campbell's] earnings" without referencing Dr. Campbell's WPA claim in particular).

The District also alludes to an argument that "the parties cannot stipulate to an incorrect legal finding" and that "as a matter of law the remedy for a due process claim is a name clearing hearing." Def.'s Reply Pl.'s Opp'n Def.'s Mot. 2, ECF No. 95 [hereinafter Def.'s Reply]; *see also* Def.'s Mem. 8–9 (arguing that "the proper remedy is a name clearing hearing"). But because the District waited until after trial to raise it, the District has waived this argument also. *See generally Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (explaining that Rule 59(e) motions cannot be used as "as a vehicle for presenting theories or arguments that could have been advanced earlier" (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010))). Indeed, at the September 10, 2015 status conference in this case, the Court raised the very issue of whether anything "limits a plaintiff['s remedy] to just the

process that [was] denied." At the status conference, the Court invited the District to submit briefing on this issue before trial, but it did not. Having declined to brief this issue before trial, the District cannot now use its post-trial motion to make an argument "that could have been advanced earlier." *Estate of Gaither*, 771 F. Supp. 2d at 10 (quoting *Bilzerian*, 729 F. Supp. 2d at 14). The Court therefore disregards the District's assertion that a name-clearing hearing, to the exclusion of lost wages or other financial damages, is "as a matter of law the remedy for a due process claim." Def.'s Reply 2.

The District has not otherwise argued that the Court must set aside the parties' pretrial stipulation about Dr. Campbell's lost wages to prevent manifest injustice. *See* Def.'s Mem. 8–9. Accordingly, because "valid stipulations entered into freely and fairly . . . should not be lightly set aside," *United States v. Kanu*, 695 F.3d 74, 78 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 617 (3d Cir. 1998)), the Court will hold the District to its stipulation. The Court declines to reduce the judgment by $304,823.

## V.  CONCLUSION

For the foregoing reasons, the District's Motion for Judgment as a Matter of Law (ECF No. 83) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 25, 2016                                                              RUDOLPH CONTRERAS
                                                                                                  United States District Judge