**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JENNIFER B. CAMPBELL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-01769 (RC) |
| | : | | |
| v. | : | Re Document No.: | 84 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FEES AND COSTS**

**I. INTRODUCTION**

Plaintiff Dr. Jennifer Campbell brought suit against her former employer, the District of Columbia, in 2012. *See* Compl., ECF No.1. Dr. Campbell alleged that the District acted unlawfully when, amidst allegations that Dr. Campbell had steered contracts, the District terminated her employment as Chief Operating Officer of the District's Department of Health Care Finance. *See id.* ¶¶ 6–99. After a five-day jury trial held in December 2015, a jury found for Dr. Campbell on her constitutional claim, brought under 42 U.S.C. § 1983. *See* Verdict Form at 2, ECF No. 65. The jury awarded Dr. Campbell $250,000.00 in compensatory damages for her physical pain, emotional distress, humiliation, embarrassment, inconvenience, and medical expenses. *See id.* at 3; *see also* Jury Instrs. at 39–40, ECF No. 66 (instructing the jury to award monetary damages for physical pain, emotional distress, humiliation, embarrassment, inconvenience, and medical expenses, but not for lost wages or other employment benefits). The Court added $304,823 in financial damages to which the District had stipulated. *See* Joint Pretrial Statement at 2, ECF No. 41.

Dr. Campbell now moves for attorney's fees and costs under 42 U.S.C. § 1988, and she also urges the Court to adopt an enhancement multiplier. *See* Pl.'s Mem. P. & A. Supp. Mot. Fees & Costs at 1–2, ECF No. 84-2 [hereinafter Pl.'s Mem.]; Pl.'s Reply Def.'s Opp'n Pl.'s Mot. Fees & Costs at 3, 10–13, ECF No. 101 [hereinafter Pl.'s Reply]. The District agrees that Dr. Campbell should receive a fee award, but it argues that her requested fees and costs are too high and that an enhancement is not appropriate. *See* D.C.'s Opp'n Pl.'s Mot. Attorneys' Fees at 1, ECF No. 96 [hereinafter Def.'s Opp'n]. The Court concludes that, for the most part, Dr. Campbell's requested fees are, in light of her voluntary reductions, reasonable. But the Court declines to award fees for duplicative time spent at trial and will make minor additional reductions to account for aberrations in Dr. Campbell's attorneys' billing records. The Court also determines that an enhancement is not appropriate and that Dr. Campbell's requested costs include inappropriate items. Accordingly, the Court will grant in part and deny in part Dr. Campbell's motion.

## II.  LEGAL STANDARD

In a civil rights suit brought under 42 U.S.C. § 1983, the district court may, in its discretion, award reasonable attorney's fees to the prevailing party. 42 U.S.C. § 1988(b); *Talley v. District of Columbia*, 433 F. Supp. 2d 5, 7 (D.D.C. 2006). In doing so, the Court follows a two-step inquiry: first, the court must determine whether the party seeking attorney's fees is the prevailing party; second, the court must determine whether the requested fees are reasonable. *See Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 895 (D.C. Cir. 2004)) ("The plaintiff . . . bears the burden of establishing both entitlement to an award of attorney's fees as well as the amount properly due.").

A prevailing party "is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). A litigant need not succeed at every step of the litigation to be a prevailing party under § 1988; indeed, "a litigant 'who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.'" *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998) (quoting *Cabrales v. Cty. of L.A.*, 935 F.2d 1050, 1053 (9th Cir. 1991)).

If the Court determines that a plaintiff is the prevailing party, the court must then determine whether the fees sought are reasonable. *See* 42 U.S.C. § 1988(b); *Turner*, 354 F.3d at 895. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The plaintiff bears the burden of demonstrating that the number of hours spent on a particular task is reasonable. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969–70 (D.C. Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). To that end, the plaintiff's "supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Id.* at 970 (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (brackets and internal quotation marks omitted)). The district court should exclude from a fee request "hours that were not 'reasonably expended,'" including hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1101, at 6 (1976)).

A plaintiff can demonstrate a reasonable hourly rate (or "lodestar") by submitting evidence of "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and

the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57

F.3d 1101, 1107 (D.C. Cir. 1995). In this circuit, plaintiffs may also demonstrate a reasonable

hourly rate by relying on evidence such as an updated version of the *Laffey* Matrix created by the

United States Attorney's Office. *Id.* at 1109.[1] Although a district court may not relieve plaintiffs

of their obligation to demonstrate that rates such as those in the *Laffey* Matrix are reasonable, *see*

*Eley v. District of Columbia*, 793 F.3d 97, 105 (D.C. Cir. 2015), the *Laffey* Matrix can "provide a

useful starting point." *Covington*, 57 F.3d at 1109.

   In exceptional circumstances when "an enhanced award may be justified," a court may

take a third step and apply an additional multiplier. *Hensley*, 461 U.S. at 435. "[T]here may be

circumstances in which the basic standard of reasonable rates multiplied by reasonably expended

hours results in a fee that is . . . unreasonably low." *Blum*, 465 U.S. at 897. But because "there

are a few such circumstances," these "'rare' and 'exceptional'" circumstances "require specific

evidence that the lodestar fee would not have been adequate to attract competent counsel."

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (internal quotation marks omitted)

(quoting *Blum*, 465 U.S. at 897).

---

[1] The *Laffey* Matrix is a fee schedule used by some courts to determine reasonable hourly rates for legal work. *See generally Laffey v. Nw. Airlines, Inc.* 572 F. Supp. 354, 371–75 (D.D.C. 1983) (establishing the first *Laffey* fee matrix, in the context of a longstanding employment discrimination class action), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds*, *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)). The United States Attorney's Office for the District of Columbia prepares the matrix for use in cases in which a "fee-shifting" statute allows prevailing plaintiffs to recover their attorney's fees. *See Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015); *see also, e.g.*, *USAO Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/796471/download (last visited July 29, 2016). Updated *Laffey* Matrix rates are available through the U.S. Attorney's Office's website. *See Civil Division*, U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/civil-division (last updated Dec. 1, 2015) (publishing links to *Laffey* matrices at the bottom of the webpage).

### III. ANALYSIS

Dr. Campbell requests fees for the work of eight attorneys and one paralegal.[2] In support of her request, Dr. Campbell has provided billing records that provide descriptions of the work performed, the number of hours spent on various tasks, and the applicable rates for each individual. *See generally* Billing Records, Pl.'s Reply Ex. A, ECF No. 101-2. The District does not dispute that Dr. Campbell is the prevailing party, nor does the District argue against applying the 2015–2016 *Laffey* Matrix to determine reasonable hourly rates for Dr. Campbell's attorneys.

---

[2] The individuals listed in Dr. Campbell's initial request are: Anabia Hasan, Katie Lampron, Alan Lescht, Sara McDonough, Rani Rolston, Sara Safriet, Constance Travanty, and paralegal Sandra Valiente. *See* Pl.'s Mot. Fees & Costs at 1–2, ECF No. 84 [hereinafter Pl.'s Mot.]. In Dr. Campbell's reply filings, she requests fees for an additional 100.0 hours of work performed by Ms. McDonough, Ms. Safriet, and Ms. Valiente, as well as an additional attorney, August Johannsen. *See* Johannsen Billing Records, Pl.'s Reply Ex. A at 3, ECF No. 101-2 (documenting 3.3 hours of work performed on Dr. Campbell's case); McDonough Am. Billing Records, Pl.'s Reply Ex. A at 10–12, ECF No. 101-2 (documenting 45.8 hours of work performed on Dr. Campbell's case that are not included in the exhibits to Dr. Campbell's initial fee motion); Safriet Am. Billing Records, Pl.'s Reply Ex. A at 30–32, ECF No. 101-2 (documenting 48.8 additional hours); Valiente Am. Billing Records, Pl.'s Reply Ex. A at 40, ECF No. 101-2 (documenting 1.8 additional hours).

These additional hours consist principally of time spent opposing the District's post-trial motion, which this Court later denied, *see Campbell v. District of Columbia*, No. 12-1769, 2016 WL 3023977 (D.D.C. May 25, 2016), as well as time spent litigating this fee petition, *see, e.g.*, McDonough Am. Billing Records, Pl.'s Reply Ex. A at 11–12 (requesting fees for time spent preparing the reply in support of Dr. Campbell's fee petition). These hours are thus compensable under fee-shifting statutes. *See Grano v. Barry*, 783 F.2d 1104, 1113–14 (D.C. Cir. 1986) (observing, in the context of a motion for fees under 42 U.S.C. § 1988, that "[i]t is . . . a longstanding rule that hours reasonably devoted to litigating attorneys' fees are compensable"); *see, e.g.*, *Castle v. Bentsen*, 872 F. Supp. 1062, 1068 (D.D.C. 1995) (awarding fees in a Title VII case for time spent opposing a motion for judgment notwithstanding the verdict).

The Court notes that Dr. Campbell first raised these additional hours in her reply brief, after the District filed its opposition. Given that the District has not requested leave to file a surreply, the Court will consider Dr. Campbell's additional hours as part of her initial fee request. *See generally, e.g.*, *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 30–31 (D.D.C. 2013) (awarding fees for work that was first documented in a plaintiff's reply brief). The Court will accordingly analyze them under the objections from the District's opposition, just as the Court will do for the hours Dr. Campbell submitted in her initial fee request.

*See* Def.'s Opp'n at 1, 3.[3] Therefore, the Court will not address these issues and will use the

2015–2016 *Laffey* Matrix to determine hourly rates for Dr. Campbell's attorneys. *See USAO*

*Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C.,

https://www.justice.gov/usao-dc/file/796471/download (last visited July 29, 2016). The District

does argue, however, (1) that Dr. Campbell's attorneys failed to exercise required billing

judgment in a number of ways, so the Court should reduce their total claimed hours by thirty

percent;[4] (2) that Dr. Campbell should not receive an enhanced fee award; and (3) that

Dr. Campbell's request for costs includes improper items. *See* Def.'s Opp'n at 4–10. In response,

Dr. Campbell opposes most of the District's contentions and insists that an enhanced fee award is

appropriate, but she has voluntarily reduced some of her claimed hours and costs. *See* Pl.'s Reply

at 3, 10–13. The Court addresses each of the District's objections to Dr. Campbell's requested

fees and costs in turn.

---

[3] Although Dr. Campbell submits billing records dating as far back as September 25, 2012, *see, e.g.*, Safriet Am. Billing Records, Pl.'s Reply Ex. A at 14, she argues that fees should "be awarded at current USAO Matrix rates." Pl.'s Mem. at 13; *see also id.* at 15 (showing that Dr. Campbell filed her fee motion on February 23, 2016); USAO Attorney's Fees Matrix— 2015–2016, Pl.'s Mot. Ex. A, ECF No. 84-3 (setting rates for June 1, 2015 through May 31, 2016). Because the District does not contest this point nor the fact that Dr. Campbell's requested rates are sometimes higher than her attorneys' typical billing rates, *see* Def.'s Opp'n at 1, the Court will deem any arguments against Dr. Campbell's requested rates conceded and will apply the 2015–2016 rates. *See* Lescht Decl. ¶¶ 10–11, Pl.'s Mot. Ex. B, ECF No. 84-4 (noting that Alan Lescht, one of Dr. Campbell's attorneys, "provide[s] services at a rate lower than that set forth by the U.S. Attorney's Office Matrix to enable [his firm's] clients to afford legal representation"). *See generally Perdue*, 559 U.S. at 556 (explaining that, "by basing the award on current rates," a court can compensate for a delay in fee payment (quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 282 (1989))); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 60 (D.D.C. 2011) (applying *Perdue*'s principles in ruling on a recent § 1988 fee motion).

[4] The District does not, however, argue that the Court should reduce Dr. Campbell's fee award to account for limited success. *See* Def.'s Opp'n at 3–10. *Cf. Hensley*, 461 U.S. at 434–36 (allowing such reductions in certain cases).

## A.  Exercise of Billing Judgment

### 1.  Insufficient Exclusions

The District contends that Dr. Campbell's counsel failed to exercise proper billing judgment and did not "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Def.'s Opp'n at 4 (quoting *Hensley*, 461 U.S. at 434); *see id.* at 4–5. A lawyer requesting fees under 42 U.S.C. § 1988 must do so "just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "The fee application should therefore indicate whether nonproductive time . . . was excluded and, if time was excluded, the nature of the work and the number of hours involved should be stated." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327–28 (D.C. Cir. 1982).

Here, the District argues that Dr. Campbell excluded "only two entries" and therefore did not exercise proper billing judgment. Def.'s Opp'n at 5. Dr. Campbell claims, however, that additional documented exclusions of entries were not required and that "affidavits averring that [counsel] did not bill all the time performed in this case" should be sufficient to establish proper billing judgment. Pl.'s Reply at 2. She is correct: "Failing to specify hours which were written off is not a fatal deficiency," and attorneys demonstrate billing judgment when "the Court can discern that the time claimed 'was necessary and reasonable and that any nonproductive time was excluded from the request.'" *District of Columbia v. Jeppsen*, 686 F. Supp. 2d 37, 39 (D.D.C. 2010) (quoting *Cook v. Block*, 609 F. Supp. 1036, 1041 (D.D.C. 1985))); *see also Heller v. District of Columbia*, 832 F. Supp. 2d 32, 55–56 (D.D.C. 2011) (holding, on the basis of plaintiff's counsel's representations in the plaintiff's fee motion, that counsel's representations about hours excluded are sufficient to demonstrate billing judgment).

To this end, Dr. Campbell has provided a supplemental affidavit from Mr. Lescht, which provides more detail about the work that his firm excluded from Dr. Campbell's fee request. *See* Pl.'s Reply at 2; Lescht Suppl. Decl., Pl.'s Reply Ex. H, ECF No. 101-9. The affidavit states that Mr. Lescht did not request fees for hours spent (1) meeting with Dr. Campbell during the course of the litigation, Lescht Suppl. Decl. ¶ 3; (2) corresponding with opposing counsel, *id.* ¶ 4; (3) traveling to and from and attending post-trial mediation, *id.* ¶ 5; and (4) supervising the associate attorneys who worked on this case, *id.* ¶ 6. In addition to Mr. Lescht's supplemental affidavit, however, Dr. Campbell also provides amended billing records that include additional entries of excluded work. *See* Pl.'s Reply at 2–3; Billing Records, Pl.'s Reply Ex. A. These amended billing records include more than forty entries (consisting of more than fifty hours) of excluded work.[5] And Dr. Campbell notes that many of the attorneys' billing records further support the claim that Mr. Lescht excluded work from Dr. Campbell's fee request, because Mr. Lescht's billing records omit time entries that correspond to time entries in which other attorneys' billing records mention Mr. Lescht.[6] Furthermore, although Dr. Campbell filed her complaint in 2012, the amounts that her attorneys billed were extremely modest until late 2015, when it became

---

[5] *See* Lampron Am. Billing Records, Pl.'s Reply Ex. A at 4, ECF No. 101-2 (excluding one entry consisting of 0.3 hours of work); McDonough Am. Billing Records, Pl.'s Reply Ex. A at 7–11 (excluding ten entries consisting of 22.9 hours of work); Rolston Am. Billing Records, Pl.'s Reply Ex. A at 13 (excluding one entry consisting of 1 hour of work); Safriet Am. Billing Records, Pl.'s Reply Ex. A at 14–31 (excluding twenty-nine entries consisting of 26.75 hours of work); Valiente Am. Billing Records, Pl.'s Reply Ex. A at 38–40 (excluding seven entries consisting of 1.6 hours of work).

[6] *See* Pl.'s Reply at 2–3 (citing portions of the billing records that refer to Mr. Lescht and mention work done by "AL" or "Alan"). *Compare, e.g.*, McDonough Am. Billing Records, Pl.'s Reply Ex. A at 6 (noting that, on October 12, 2015, Ms. McDonough conferred with "AL" about a motion), *with* Lescht Billing Records, Pl.'s Reply Ex. A. at 5 (including no entries from October 2015).

clear that her case would go to trial.[7] Based on this record, the Court concludes that

Dr. Campbell's attorneys' amended billing records, taken with Mr. Lescht's supplemental

affidavit, satisfy Dr. Campbell's obligation to exclude "excessive, redundant, or otherwise

unnecessary" hours. *Hensley*, 461 U.S. at 434.

### 2. Administrative Work

The District further contends that Dr. Campbell requests fees for administrative work and

that such work is not compensable under § 1988. Def.'s Opp'n at 5; *see also* Clerical Tasks by

Att'ys, Def.'s Opp'n Ex. A, ECF No. 96-1 (listing entries that the District claims involve clerical

work). In response, Dr. Campbell argues that work documented in several of the entries that the

District attacks required an attorney's knowledge and expertise, and thus should be compensated

at attorney rates. Pl.'s Reply at 3–4. Specifically, Dr. Campbell points to four entries:

(1) Ms. Safriet's 1.4 hours of time spent editing and copying a list of trial exhibits on September

29, 2015, *id.* at 3; (2) Ms. Safriet's 0.4 hours of time spent preparing documents to bring to the

courthouse on December 9, 2015, *id.* at 3–4; (3) Ms. Safriet's 2.9 hours of time spent printing,

organizing, marking, redacting, and copying exhibits on December 10, 2015, *id.* at 4; and (4)

Ms. Travanty's 0.8 hours of time spent assembling documents for discovery production on

January 30, 2014 and February 4, 2014, *id. See* Safriet Am. Billing Records, Pl.'s Reply Ex. A at

14, 24–25; Travanty Billing Records, Pl.'s Reply Ex. A at 34. Dr. Campbell argues that these

tasks required an attorney's discretion and training, and that attorneys customarily perform them.

*See* Pl.'s Reply at 3–4.

---

[7] *See, e.g.*, McDonough Am. Billing Records, Pl.'s Reply Ex. A at 6–12 (documenting over 200 hours spent on Dr. Campbell's case, but all in October 2015 or after); Safriet Am. Billing Records, Pl.'s Reply Ex. A at 14–32 (documenting over 400 hours, but nearly all in September 2015 or after); Travanty Am. Billing Records, Pl.'s Reply Ex. A at 33–37 (documenting only about 150 hours spent on Dr. Campbell's case in 2012, 2013, and 2014).

The Supreme Court has noted that attorneys' compensable work includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989). To be sure, these tasks lie "in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal"—but they are not "purely clerical or secretarial tasks," which are not compensable at an attorney's rate. *Id.* Based on Dr. Campbell's description of the work documented in the four time entries discussed above, all four entries fall squarely within the Supreme Court's description of compensable attorney work: they all generally involve "document production" and "compilation of . . . data." *Id.*; *see* Pl.'s Reply at 3–4 (explaining that Dr. Campbell's attorneys "exercised discretion and applied [their] training" to determine appropriate documents to produce in discovery, to identify appropriate exhibits for trial, and to redact appropriate information from those exhibits). The Court therefore agrees with Dr. Campbell, finds that her attorneys appropriately performed the tasks described in the four entries, and holds that those tasks are compensable under § 1988.

As for the other tasks that the District contends are administrative and thus not compensable, *see* Def.'s Opp'n at 5, Dr. Campbell disagrees and argues that those tasks are not "purely clerical" in nature. *See Jenkins*, 491 U.S. at 288 n.10 ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); Pl.'s Reply at 4–5. But Dr. Campbell concedes that these tasks should be billed at the paralegal rate. *See* Pl.'s Reply at 4–5.

Having reviewed these tasks, the Court agrees with Dr. Campbell. Paralegal work performed by an attorney is compensable at the paralegal rate. *See Harvey v. Mohammed*, 951 F.

Supp. 2d 47, 66 (D.D.C. 2013) (citing *Jenkins*, 491 U.S. at 288 n.10).[8] The work that the District attacks as "clearly clerical," Def.'s Opp'n at 5, is not substantially less "legal" than the types of work that other courts have determined compensable at the paralegal rate. For example, the District takes issue with time that Dr. Campbell's counsel spent printing and organizing documents. *See* Clerical Tasks by Attorneys, Def.'s Opp'n Ex. A. But this Court has held that similar tasks, such as "organization of files and deposition documents," are compensable as paralegal work. *See Harvey*, 951 F. Supp. 2d at 66. Therefore, the Court will apply the paralegal rate to these tasks, as reflected in Dr. Campbell's amended billing records. *See* McDonough Am. Billing Records, Pl.'s Reply Ex. A, at 7, 9; Safriet Am. Billing Records, Pl.'s Reply Ex. A at 14–16, 18, 22–24, 26–28.[9]

---

[8] The Court notes that, in some circumstances, the Court may not be *required* to apply the paralegal rate to tasks that a paralegal would perform and that do not require an attorney's training and judgment. On occasion, courts in this district have held that such tasks are compensable at full attorney rates. *See, e.g., Cox v. District of Columbia*, 754 F. Supp. 2d 66, 77 (D.D.C. 2010) (awarding fees for "clerical" work, and observing that attorney rates may be appropriate for administrative tasks performed by solo practitioners or small firms); *see also Jenkins*, 491 U.S. at 288 n.10 (noting that many types of work "lie[] in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal"). Because, however, Dr. Campbell concedes that many of the tasks that the District mentions "should not be billed at the attorney rate" (and thus should be billed at the paralegal rate), Pl.'s Reply at 4, the Court will apply the paralegal rate as requested. *See* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 7, 9 (applying the paralegal rate to entries that the District mentioned); Safriet Am. Billing Records, Pl.'s Reply Ex. A at 14–16, 18, 22–24, 26–28 (same).

[9] The District claims that the list of non-compensable administrative tasks that it provided in its opposition contains "some examples" and is "non-exhaustive." Def.'s Opp'n at 5. The Court has reviewed Dr. Campbell's amended billing records and believes that the remaining entries are appropriately billed. Dr. Campbell has voluntarily reduced the requested rate to a paralegal rate for several time entries that the District did not mention, including for some entries that reflect additional work that Dr. Campbell's counsel performed after Dr. Campbell filed her initial fee motion. *See* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 10; Safriet Am. Billing Records, Pl.'s Reply Ex. A at 16, 23, 30. To the extent that the District believes that rates for any remaining entries should be reduced to paralegal rates, the Court deems those arguments waived. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

3.  Travel Time

The District also notes that Ms. McDonough billed travel time at her full hourly rate,

which the District argues is "another example of failure to exercise appropriate billing

judgment." Def.'s Opp'n at 5–6; *see also Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 193 (D.D.C.

2007) (citing *Cooper v. U.S. R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994)) ("Travel . . .

time is supposed to be compensated at half the attorney's hourly rate."). In her reply brief,

Dr. Campbell acknowledges that the requested travel rate was in error, but argues that her error

was an oversight, not a failure to exercise billing judgment. Pl.'s Reply at 5. As evidence,

Dr. Campbell notes that, in her original fee request, the rate that she used for Ms. Safriet's travel

time was half of Ms. Safriet's hourly rate. *Id.*; *see* Safriet Billing Records, Pl.'s Mot. Ex. L at 9,

12–14, ECF No. 84-14. Because Dr. Campbell has corrected her error, the Court will award

Dr. Campbell fees for her counsel's travel time as requested in her amended billing records.

*Compare* McDonough Billing Records, Pl.'s Mot. Ex. H at 2–3, ECF No. 84-10 (using the same

rate for travel and for non-travel time), *with* McDonough Am. Billing Records, Pl.'s Reply

Ex. A, at 7–8 (using a reduced rate, or seeking no fees, for travel time). The Court is satisfied

with Dr. Campbell's assertion that her initial error was an oversight, and that it does not indicate

lack of billing judgment more generally.

---

The Court does observe, however, that Dr. Campbell did not reduce her requested rate to the paralegal rate for one time entry that she conceded "should not be billed at the attorney rate." Pl.'s Reply at 4. *Compare* Safriet Am. Billing Records, Pl.'s Reply Ex. A at 17 (seeking the attorney rate for an entry described as "Met with SV re: creating binder for cross exam"), *with* Clerical Tasks by Attorneys at 1, Def's Opp'n Ex. A (listing the same entry as one for which the Court should not award fees). The Court accordingly will reduce the rate for that entry to the applicable paralegal rate.

### 4.  Demonstrative Exhibits

Next, the District argues that Dr. Campbell's "charges for work on demonstrative exhibits" is not compensable. Def.'s Opp'n at 6. The District notes that Dr. Campbell's attorneys "billed numerous hours contacting various companies about making trial exhibits and a time line and also billed for their own time spent on this project." *Id.*; *see also* Excess Work on Demonstratives, Def.'s Opp'n Ex. B, ECF No. 96-2 (listing time entries describing work on demonstrative exhibits). The District contends that "[v]ery little of this material was actually used at trial," and that "the amount of time spent . . . appears to include time spent learning how to make and use the exhibits." Def.'s Opp'n at 6.

In her reply brief, Dr. Campbell clarifies that these "demonstrative exhibits" were in fact PowerPoint slides that her attorneys developed for trial use. Pl.'s Reply at 5. Dr. Campbell claims that preparing these slides involved "reviewing and synthesizing the pleadings, exhibits deposition transcripts, and other evidence; creating a timeline of the case; synthesizing and analyzing the facts and evidence supporting each of [Dr. Campbell's] claims; developing a case strategy; and drafting a detailed outline that set forth [Dr. Campbell's] legal arguments and supporting evidence." *Id.* at 5–6. Given that these described tasks are tasks that attorneys customarily perform to prepare for trial, Dr. Campbell argues that "[t]he fact that [Dr. Campbell's] attorneys memorialized their case strategy in PowerPoint format, rather than in a Word document or handwritten notes, does not preclude them from recovering fees for necessary and reasonable hours of trial preparation." *Id.* at 6.

Dr. Campbell also notes that Ms. McDonough was the only attorney who formatted the slides, and that through her prior work experience, Ms. McDonough had gained considerable experience in developing PowerPoint presentations. *Id.* Dr. Campbell therefore claims that,

contrary to the District's argument, her attorneys spent minimal time "learning how to make and use" the presentation. *Id.* Additionally, "in a good faith effort to exclude any 'unnecessary' hours," Dr. Campbell states that she has reduced the fees requested in relation to Ms. McDonough's work on the exhibits by twenty percent. *Id. Compare* Excess Work on Demonstratives at 1, Def.'s Opp'n Ex. B (listing several entries that describe Ms. McDonough's work on demonstrative exhibits), *with* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 6 (using a reduced rate for entries related to demonstrative exhibits, including for entries not mentioned in the District's list of questionable entries).

Reasonable time spent preparing for trial (including time spent preparing exhibits like Dr. Campbell's slides) is compensable under § 1988. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000) (allowing compensation for time spent preparing exhibits in the form of "computer generated, multi-media presentations"); *Harvey*, 951 F. Supp. 2d at 64 (allowing compensation for time spent "preparing for and conducting a mock trial, or 'focus group,'" as long as the hours expended were reasonable). Even if, at trial, the prevailing party does not actually use the majority of the exhibits that she prepared, time spent preparing them is compensable as long as the work "contributed to the ultimate result obtained in this litigation." *See Air Transp. Ass'n of Can.*, 156 F.3d at 1335 (awarding fees for time spent in connection with an unsuccessful motion to stay, after finding that the time spent on the motion contributed to the movant's later victory). Here, Dr. Campbell argues that the time spent preparing the PowerPoint slides served as a necessary part in her overall case strategy, and her description of the tasks

completed during that time supports her argument. *See* Pl.'s Reply at 5–6. The Court accordingly finds that she should receive some fees in relation to the time spent for that purpose.[10]

The Court also notes, however, that much of the work billed by another attorney, Ms. Safriet, on these exhibits seems to have involved researching and communicating with outside vendors about the demonstrative exhibits. *See* Excess Work on Demonstratives at 1–2, Def.'s Opp'n Ex. B (listing entries for time that Ms. Safriet spent "[r]eview[ing] websites of companies to make timelines" and contacting vendors such as "Courtroom Technology," "Cogent Legal," "Amicus Visual Solutions," and "MGM Trial Services"). This work does not appear to have required an attorney's knowledge or expertise, and likely could have been completed by a paralegal. Indeed, Ms. Valiente, the paralegal for Dr. Campbell's attorneys, appears to have completed several similar tasks. *See id.* at 3–4 (listing Ms. Valiente's hours spent working on the exhibits). But because Dr. Campbell has now voluntarily excluded requests for fees in relation to almost all the time that Ms. Safriet spent researching and communicating with outside vendors about the demonstrative exhibits, *see* Safriet Am. Billing Records, Pl.'s Reply Ex. A at 17–20 (seeking no fees for fourteen time entries that relate to demonstrative exhibits), the Court believes that no additional reduction is warranted for fees that Dr. Campbell requested in relation to the exhibits.[11]

---

[10] For one time entry that describes work that Ms. McDonough performed on the demonstrative exhibits, Dr. Campbell has not reduced the requested rate by twenty percent. *See* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 7 (seeking Ms. McDonough's full attorney rate for an entry described in part with "created slides for opening"). Because of Dr. Campbell's expressed intent to "deduct the fees request for the hours Ms. McDonough spent working on demonstrative exhibits by 20-percent," Pl.'s Reply at 6, the Court will reduce the rate for that entry by twenty percent.

[11] The District suggests that its list of charges related to demonstrative exhibits is also "non-exhaustive." Def.'s Opp'n at 6. As before, the Court will deem the District's objections to any remaining entries waived. *See supra* note 9.

5. Duplicative Work

The District also claims that Dr. Campbell's request includes "numerous instances where multiple lawyers billed for the same tasks." Def.'s Opp'n at 6. In particular, the District points to "the attendance of three attorneys at each day of trial." *Id.* The District claims that "[t]here was nothing so complicated about this case that it required multiple lawyers." *Id.* The District also argues that "[t]wo of these lawyers were quite junior," and that the District should not have to "pay for [the] training of junior associates." *Id.*

Redundant and duplicative work should indeed be excluded from a fee award. *See Hensley*, 461 U.S. at 434. Dr. Campbell has argued, however, that the presence of three attorneys at trial did not involve duplication of effort; she claims that each attorney contributed meaningfully to Dr. Campbell's success. *See* Pl.'s Reply at 6–7. Dr. Campbell further claims that "this case involved complex unique claims," and that it was "unreasonable to expect a single attorney to handle this type of case"—particularly given that the District itself had two experienced attorneys at trial. *Id.* Dr. Campbell also contends that "the fact that Ms. McDonough and Ms. Safriet are 'quite junior' does not excuse the District from reimbursing their fees" because "[b]oth attorneys contributed to [Dr. Campbell's] successful outcome" by questioning witnesses at trial, performing legal research, and performing other necessary work. *Id.* at 7.

For fees under § 1988, "a reduction is warranted only if the attorneys are unreasonably doing the same work." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (emphases omitted). But if using a team of attorneys results in "unnecessary duplication," "double compensation should not be granted." *Id.* To that end, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a

case." *Poy v. Boutselis*, 352 F.3d 479, 490 (1st Cir. 2003) (alteration and internal quotation mark omitted) (quoting *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001)).

Here, based on the Court's in-trial observation, the Court agrees with Dr. Campbell's assertion that each of the three attorneys at trial contributed to her trial presentation. But that does not mean that Dr. Campbell's trial team was staffed appropriately or that each attorney's presence at trial was reasonable. Just one attorney could have performed all the tasks that Dr. Campbell's two junior attorneys performed: because Mr. Lescht, the most senior of Dr. Campbell's attorneys examined most of the witnesses at trial, the two junior attorneys (Ms. McDonough and Ms. Safriet) examined just a couple witnesses each. Thus, even though two attorneys' presence at trial would have been reasonable, having a third attorney was unnecessary.

Perhaps recognizing the unnecessary duplication, Dr. Campbell has already omitted any request for fees relating (1) to Ms. McDonough's time spent at trial on December 7, 2015 and December 8, 2015, and (2) to both junior attorneys' time spent in the courthouse on December 11, 2015.[12] The Court will therefore, for entries relating to time spent at trial, reduce Dr. Campbell's requested fees only for the two other days of trial: December 9, 2015 and December 10, 2015. For those two days of trial, the Court will decline to award fees for the lower of Ms. McDonough and Ms. Safriet's time entries.[13]

---

[12] *See* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 7–8; Safriet Am. Billing Records, Pl.'s Reply Ex. A at 25.

[13] The Court will therefore decline to award fees corresponding (1) to Ms. McDonough's 3 hours attending trial on December 9, 2015 and (2) to Ms. Safriet's 7.45 hours attending trial on December 10, 2015. *See* Def.'s Opp'n Ex. C, ECF No. 96-3 (comparing Ms. McDonough's and Ms. Safriet's trial time).

On the topic of duplicative billing, the Court will also decline to award Dr. Campbell fees in relation to four time entries that appear to be duplicates of other entries. *See* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 10 (claiming three February 23, 2016 time entries that

6. Work on Superior Court Action

Finally, the District argues that Dr. Campbell inappropriately requests fees for work performed for her District of Columbia Superior Court action against the private parties who allegedly made the allegations that led to her termination. Def.'s Opp'n at 6–7. The District claims that because it is "not a party to that action," it "should not have to reimburse [Dr. Campbell] for the fees incurred there." *Id.* at 6. In particular, the District takes issue with time that Ms. Lampron and Ms. Rolston spent defending Dr. Campbell's deposition and conducting depositions for Carrie Brooks-Brown, Reuben Charles, Cedric Simon, and Wayne Turnage. *See id.* at 6–7; Activities Related to Superior Court Action, Def.'s Opp'n Ex. D, ECF No. 96-4 (listing time entries that the District claims are related to Dr. Campbell's Superior Court action, not Dr. Campbell's case in this Court); *see also* Pl.'s Reply at 7–8 (clarifying the entries in the District's exhibit).

In response, Dr. Campbell argues that because this time "was expended in pursuit of a successful resolution of the case," it should be compensable. Pl.'s Reply at 8 (quoting *Boehner v. McDermott*, 541 F. Supp. 2d 310, 318 (D.D.C. 2008)). Dr. Campbell notes that "[a]lthough the depositions at issue were noticed in the Superior Court Case, [Dr. Campbell] used that testimony

---

exactly replicate the three February 23, 2016 time entries preceding them); Safriet Am. Billing Records, Pl.'s Reply Ex. A at 29–30 (claiming that Ms. Safriet twice "Met with SV re: update on ordering trial / post-trial transcripts" for 0.2 hours on February 23, 2016). Dr. Campbell had already submitted the four time entries in her initial fee motion, so the Court presumes that her attorneys inadvertently copied and pasted the duplicate entries into the billing records that she submitted with her reply brief. *Compare* McDonough Billing Records at 6, Pl.'s Mot. Ex. H (showing three February 23, 2016 entries), *and* Safriet Billing Records at 19, Pl.'s Mot. Ex. L (showing one February 23, 2016 that reads "Met with SV re: update on ordering trial / post-trial transcripts"), *with* McDonough Am. Billing Records, Pl.'s Reply Ex. A at 10 (showing six February 23, 2016 time entries); Safriet Am. Billing Records, Pl.'s Reply Ex. A at 29–30 (showing two entries that describe the February 23, 2016 meeting "with SV"). Because "redundant" time entries are not compensable, *Hensley*, 461 U.S. at 434, the Court will not award fees for the duplicate entries.

to succeed in this [case]": she states that her counsel used the deposition testimonies obtained "to develop case strategy," to "draft cross-examination questions," "to determine which witnesses to call at trial," and to provide additional evidence for the jury at trial. *Id.* (noting that "Ms. Brooks-Brown's deposition testimony was read into the record at trial"). Dr. Campbell states that "[t]he fact of the matter is that if [she] had not noticed depositions for Ms. Brooks-Brown, Mr. Simon, and Mr. Charles in the Superior Court [c]ase, she would have deposed them in this one." *Id.*

Fee awards under § 1988 are only permitted for time that was "reasonably expended on *the litigation*." *Webb v. Bd. of Educ.*, 471 U.S. 234, 242 (1985) (emphasis in original) (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 433). The Supreme Court has suggested, however, that work performed for separate, ancillary proceedings may be compensable if that work was "both useful and of a type ordinarily necessary" to achieve the result obtained in litigation. *Id.* at 243; *see also id.* at 243 n.19 (suggesting that, to meet this standard, the work from the separate proceeding must "substitute[]" for or serve as the "equivalent" of work which would have been performed in the litigation); *Concerned Veterans*, 675 F.2d at 1335 ("Compensable time should not be limited to hours expended within the four corners of the litigation."). Accordingly, courts in this district have awarded fees for work performed for separate but related actions, if there is a "clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed." *Concerned Veterans*, 675 F.2d at 1335; *see, e.g.*, *Harvey*, 951 F. Supp. 2d at 57–58 (awarding fees for work performed to establish a deceased individual's estate, for which the plaintiff served as the legal representative, because establishing the estate was "necessary to the pursuit of the § 1983 action and [was] thus 'reasonably expended on the litigation'" (quoting *Hensley*, 461 U.S. at 433)); *Boehner*, 541 F. Supp. 2d at 320 (allowing fees for work on an amicus brief, because the plaintiff "expended time

on the amicus brief in pursuit of a successful resolution in this matter and a reasonably prudent attorney would have done the same").

Here, Dr. Campbell has shown that the depositions of Carrie Brooks-Brown, Reuben Charles, Cedric Simon, and Wayne Turnage aided her attorneys' trial preparation—and, in one instance, provided evidence for trial. *See* Pl.'s Reply at 8. The Court concludes, therefore, that the time Dr. Campbell's counsel allegedly spent working on Dr. Campbell's Superior Court action "was expended in pursuit of a successful resolution of the case in which fees are being claimed." *Concerned Veterans*, 675 F.2d at 1335. For that work, therefore, the Court will award Dr. Campbell her requested fees.[14]

### 7.  Fee Reduction

For the foregoing reasons, the Court determines that, apart from the fee reductions that the Court has noted in footnotes above, *see supra* notes 9, 10, 13, no further fee reduction is warranted. Therefore, the Court will not apply the thirty percent overall reduction that the District requests. *Cf.* Def.'s Opp'n at 7–8.

### B.  Whether to Award an Enhancement

The Court now turns to Dr. Campbell's claim that her "unprecedented success merits an enhancement multiplier." Pl.'s Mem. at 13–14. Specifically, Dr. Campbell contends that her case is the first of its kind: she asserts that "this is the only case in this jurisdiction in which a plaintiff has prevailed at a jury trial on a Fifth Amendment Procedural Due Process claim ([alleging deprivation of a liberty interest in pursuing a chosen field of employment] under a stigma or disability theory), brought under 42 U.S.C § 1983." *Id.* The Supreme Court has emphasized,

---

[14] However, Dr. Campbell cannot receive a windfall for time discussed in this section. Accordingly, she may not seek compensation for such time in the Superior Court proceeding, should she prevail in that matter.

however, that "[n]either complexity nor novelty of the issues . . . is an appropriate factor in determining whether to increase the basic fee award." *Blum*, 465 U.S. at 898–99; *accord Perdue*, 559 U.S. at 553. The difficulty of establishing the merits of a plaintiff's claim is "ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "Taking account of it again through lodestar enhancement amounts to double counting." *Id.* at 563.

Dr. Campbell suggests nonetheless that the novelty of her victory "underscores the significant risk counsel undertook in representing Dr. Campbell on contingency." Pl.'s Mem. at 14. But the Supreme Court has spoken to this issue also and has held that "enhancement for contingency is not permitted" for calculation of a reasonable attorney's fee. *See Dague*, 505 U.S. at 567 (articulating this principle in the context of fee-shifting provisions in environmental statutes); *see also Perdue*, 559 U.S. at 558 (applying *Dague*'s holding to fee awards under § 1988); *cf. id.* at 555–56 (discussing cases in which enhancements may be appropriate without mentioning high-risk cases). "[A]n enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar" and "provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones." *Dague*, 505 U.S. at 562–63.[15]

Thus, Dr. Campbell argues in vain that counsel made "extraordinary sacrifices and risked permanent harm, both financially and professionally." Pl.'s Reply at 11. Although her counsel's representation may be commendable, such sacrifices and risks are inherent in much complex

---

[15] Moreover, to the extent that Dr. Campbell's attorneys' contingency arrangement allows them to retain a percentage of her recovery of damages, they receive compensation for the contingency through that means as well.

civil litigation. *See generally Dague*, 505 U.S. at 562–63 (discussing with approval the "risk of loss" that contingency-fee attorneys may face in litigation, because it incentivizes attorneys to bring more relatively meritorious claims). The Court finds that the *Laffey* rates, used as the lodestar here, adequately capture these inherent sacrifices and risks. *See Briggs v. District of Columbia*, 73 F. Supp. 3d 59, 63 (D.D.C. 2014) ("*Laffey* rates represent presumptive maximum rates for complex federal litigation . . . ." (emphases omitted)).

Dr. Campbell makes no other arguments to support her proposed enhancement. *See* Pl.'s Mem. at 13–14; Pl.'s Reply at 10–11. Because Dr. Campbell has not overcome "the 'strong presumption' that the lodestar figure is reasonable," *Perdue*, 559 U.S. at 554, the Court lacks any grounds on which it could "provide a reasonably specific explanation for . . . [an] award of an enhancement," *id.* at 558 (requiring a district court to provide "a reasonably specific explanation" to facilitate appellate review). The Court accordingly declines to award Dr. Campbell a fifty percent enhancement of her fee award.

## C. Costs

The District also argues that Dr. Campbell "included improper items in her requests for costs." Def.'s Opp'n at 9–10. Specifically, the District argues that the following items, which Dr. Campbell listed in her request for costs, are not compensable: (1) expert witness fees; (2) demonstrative exhibits; (3) "Decision Quest," which "appears to be a trial consulting service"; (4) travel; and (5) office supplies. *Id.*; *see* Pl.'s Mem. at 14 (listing Dr. Campbell's requested costs). In her reply, Dr. Campbell offers no response to the District's criticism of her requests for costs in relation to the demonstrative exhibits, trial consulting services, and office supplies. *See* Pl.'s Reply at 11–13. Because Dr. Campbell, as the prevailing party, bears the burden to establish her entitlement to any fees and costs—and, given her lack of response, has

not done so in relation to these three categories of costs—the Court determines that Dr. Campbell does not merit a costs award for these three categories. *See Turner*, 354 F.3d at 895 (indicating that the prevailing party bears the burden of establishing her entitlement to any award of fees and costs under § 1988). Indeed, in Dr. Campbell's reply brief, she has reduced her requested award of costs so that it omits the amounts Dr. Campbell previously claimed for those three categories. *Compare* Pl.'s Mem. at 15 (seeking $19,498.69 in costs), *with* Pl.'s Reply at 11–13 (seeking $15,043.75 in costs).

Dr. Campbell argues, however, that she should receive an award of costs for her expert witness fees and for her attorneys' travel expenses. Pl.'s Reply at 12–13 (seeking $5,600 for "damage evaluation reports" and $126.32 in travel costs). But Dr. Campbell cites to no authority that suggests that expert fees are reimbursable under § 1988. *See* Pl.'s Reply at 12; *cf. Harvey*, 951 F. Supp. 2d at 73–74 (holding that "expert fees are not available" for § 1983 actions). Although the Court acknowledges that the experts' reports on Dr. Campbell's damages "obviated the need for complicated and extensive testimony and presentation of evidence regarding lost pay," Pl.'s Reply at 12, no statutory authority exists "for the compensation of expert fees in § 1983 actions," *Harvey*, 951 F. Supp. 2d at 74. Therefore, the Court will not award Dr. Campbell costs in relation to fees paid to experts for damages evaluation reports.

Other courts in this District have held, however, that transportation costs are recoverable in a § 1983 action. *See, e.g., Salazar v. District of Columbia*, 991 F. Supp. 39, 61–62 (D.D.C. 2014) (allowing reimbursement for "ground transportation costs"); *Harvey*, 951 F. Supp. 2d at 70 (allowing reimbursement for "certain transportation costs"); *Heller*, 832 F. Supp. 2d at 60–61 (allowing reimbursement for travel expenses); *Sexcius v. District of Columbia*, 839 F. Supp. 919, 927 & n.26 (D.D.C. 1993) (citing *Jenkins*, 491 U.S. at 285) (allowing reimbursement for "local

transportation and parking costs"). *See generally Jenkins*, 491 U.S. at 285 (explaining that a "reasonable attorney's fee" under § 1988 "must take account of other expenses," aside from "work performed personally by members of the bar").[16] Here, Dr. Campbell's counsel has included detailed records of travel costs reasonably incurred, and has furthermore reduced the amount requested. *See* Pl.'s Reply at 12 & n.3; *see also* Travel Expenses, Pl.'s Reply Ex. J, ECF No. 101-11 (listing Dr. Campbell's claimed costs). *Compare* Pl.'s Mem. at 14 (seeking $200.14 in travel expenses), *with* Pl.'s Reply at 12 (seeking $126.32 in travel expenses). The Court will therefore award Dr. Campbell her attorneys' modest travel costs, in the amount requested in her reply.

---

[16] The Court is mindful that, in this Circuit, travel expenses are not compensable under the Equal Access to Justice Act (EAJA), 28 U.S.C § 2412. *See Mass. Fair Share v. Law Enf't Assistance Admin.*, 776 F.2d 1066, 1069–70 & 1070 n.28 (D.C. Cir. 1985) (denying reimbursement for "taxi fares" and "travel expenses" under the EAJA); *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 224 (D.C. Cir. 1984) (denying reimbursement for "taxi fares" under the EAJA). The statutory authorization for taxation of costs under the EAJA provides a list of reimbursable costs that do not include travel expenses. *See* 28 U.S.C §§ 1920; 2412(a)(1). Courts in this circuit thus interpret the statute as foreclosing the reimbursement of travel expenses. *See NAACP v. Donovan*, 554 F. Supp. 715, 719 (D.D.C. 1982) ("Through application of the rule of ejusdem generis it appears to the Court that such items as meals, travel and telephone expenses were not intended to be covered by this provision."); *see also Mass. Fair Share*, 776 F.2d at 1070 n.28 (citing *Donovan*); *Action on Smoking*, 724 F.2d at 224 & n.67 (also citing *Donovan*).

The D.C. Circuit has also held, however, that costs under § 1988 are not limited by the enumerated costs under 28 U.S.C § 1920. *See Laffey*, 746 F.2d at 30 (rejecting the argument "that only taxable costs [under § 1920] may be awarded" as "overly narrow"). "The authority granted in section 1988 to award a 'reasonable attorney's fee' included the authority to award those reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (alteration omitted) (quoting *Northcross v. Bd. of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979)). Therefore, attorneys "are entitled to these costs upon a showing that such costs are of a type passed on by the firms involved to private clients." *Id.* Because courts in this district have consistently held that travel costs are reimbursable, *see supra*, the Court concludes that Dr. Campbell can recover these costs under § 1988.

### D.  Total Fees and Costs

Based on the 2015–2016 *Laffey* Matrix's hourly rates and time entries corresponding to

Dr. Campbell's compensable work, *see supra* Part III.A, the Court will award Dr. Campbell

$314,782.30 in attorney's fees.[17] As the Court concludes above, no multiplier is warranted. *See*

*supra* Part III.B. As discussed above, Dr. Campbell's request for costs will be reduced by

$5,600, the amount she requested for expert fees, to $9,443.75. *See supra* Part III.C; *cf.* Pl.'s

Reply at 11–13 (requesting $15,043.75 in costs, of which $5,600 were for expert fees).

Therefore, the Court will award Dr. Campbell attorney's fees and costs in the amount of

$324,226.05.


### IV.  CONCLUSION

For the foregoing reasons, Dr. Campbell's Motion for Fees and Costs is **GRANTED IN**

**PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is

separately and contemporaneously issued.


Dated: July 29, 2016                                                          RUDOLPH CONTRERAS
                                                                             United States District Judge

---

[17] The fees were calculated based on 2015–2016 *Laffey* rates as follows: $3,347.50 for Ms. Hasan (10.3 hours at $325 per hour); $937.20 for Mr. Johannsen (3.3 hours at $284 per hour); $7,832.50 for Ms. Lampron (24.4 hours at $325 per hour); $40,015.00 for Mr. Lescht (75.5 hours at $530 per hour); $69,255.90 for Ms. McDonough (172.6 hours at $315 per hour; 52.8 hours at $252 per hour, a rate reduced by twenty percent for work on demonstrative exhibits; 3 hours at $157.50 per hour, for travel; and 7.2 hours at $154 per hour, for administrative work); $3,782.80 for Ms. Rolston (9.8 hours at $386 per hour); $134,840.80 for Ms. Safriet (398.8 hours at $325 per hour; 6 hours at $162.50 per hour, for travel; 27.7 hours at $154 per hour, for administrative work); $50,310.00 for Ms. Travanty (154.8 hours at $325 per hour); and $4,450.60 for Ms. Valiente (28.9 hours at $154 per hour).